# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| ANASTASIA SINEGAL, ET AL. | CASE NO. 2:18-CV-01157 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| PNK (LAKE CHARLES), LLC | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court are a Motion for Partial Summary Judgment [doc. 12] and Motion for Summary Judgment [doc. 31] filed under Federal Rule of Civil Procedure 56 by defendant PNK (Lake Charles), LLC ("PNK") and former defendant Cheryl Tezeno. Plaintiffs Anastasia Sinegal and Lewis Dervis oppose both motions.

### I.
### BACKGROUND

This suit arises from injuries that plaintiff Anastasia Sinegal allegedly sustained at L'Auberge Casino Resort in Lake Charles, Louisiana, on the morning of May 6, 2017. Sinegal approached a slot machine on the casino floor. *See* doc. 31, att. 4, at 08:52 (L'Auberge security footage). In the brief time Sinegal's back was turned, a L'Auberge employee operating a carpet sweeper turned from the perpendicular aisle into the aisle behind the row of machines where Sinegal was standing. *Id.* Sinegal turned around and began walking away from the slot machines, at which time she tripped over the carpet sweeper and fell to the ground. *Id.*

Sinegal and her husband, Lewis Dervis, filed suit against PNK and the employee (later identified as Cheryl Tezeno) in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana. Doc. 1, att. 1. PNK removed the action to this court, alleging that there was no basis for Tezeno's liability and that she had been improperly joined to the suit to defeat the court's diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1. They also moved for partial summary judgment, seeking dismissal of the claims against Tezeno. Doc. 12.

Plaintiffs moved to remand the matter. Doc. 9. The court denied the motion, finding that Tezeno was improperly joined and dismissing the claims against her, but has not ruled on the motion for partial summary judgment. *See* docs. 28, 33. Before that ruling, PNK and Tezeno also moved for summary judgment seeking dismissal of all claims in the matter. Doc. 31. They assert, in relevant part, that plaintiffs will not be able to show that PNK is liable under Louisiana's Merchant Liability Act. Doc. 31, att. 1. Plaintiffs oppose the motion and PNK has filed a reply. Docs. 34, 36.

## II.
## SUMMARY JUDGMENT STANDARDS

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Because the claims against Tezeno have already been dismissed, the motion for partial summary judgment is moot and the court instead considers the claims against PNK under the motion for summary judgment.

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *E.g., Cates v. Sears,*

*Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). In Louisiana, claims against merchants based on falls on the premises are governed by the Louisiana Merchant Liability Act ("LMLA"), Louisiana Revised Statute § 9:2800.6. A casino qualifies as a merchant under this statute. *Rowell v. Hollywood Casino Shreveport*, 996 So.2d 476, 478 (La. Ct. App. 2d Cir. 2008). To prevail, a plaintiff must prove the following: (1) a condition on the premises presented an unreasonable risk of harm; (2) this harm was reasonably foreseeable; (3) the merchant either created or had actual or constructive notice of the condition; and (4) the merchant failed to exercise reasonable care. La. Rev. Stat. § 9:2800.6(B); *White v. Wal-Mart Stores, Inc.*, 699 So.2d 1081, 1084 (La. 1997). Failure to prove any of these elements is fatal to the plaintiff's case. *Richardson v. Louisiana-1 Gaming*, 55 So.3d 893, 895 (La. Ct. App. 5th Cir. 2010).

PNK maintains that Tezeno's operation of the carpet sweeper on the gaming floor did not create an unreasonable risk of harm because it was an open and obvious hazard. A condition that is open and obvious is not unreasonably dangerous, and so a merchant has no duty to protect against it. *Taylor v. Wal-Mart Stores, Inc.*, 2006 WL 1476031, at *2 (W.D. La. May 23, 2006) (citing *Pitre v. La. Tech Univ.*, 673 So.2d 585 (La. 1996)). The inquiry "focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, not the victim's actual or potentially ascertainable knowledge." *Broussard v. State ex rel. Office of State Bldgs.*, 113 So.3d 175, 188 (La. 2013). However, the court must also consider "the utility of the complained-of condition, the cost of preventing the harm, and the nature of the plaintiff's activities in terms of social utility or whether it is dangerous by nature." *Butler v. Wal-Mart Stores, Inc.*, 2009 WL 1507580, at

*3 (E.D. La. May 26, 2009). "This balancing [test] is 'peculiarly . . . for the jury or trier of facts.'" *Id.* (quoting *Reed v. Wal-Mart Stores, Inc.*, 708 So.2d 362, 364 (La. 1998)).

According to Lee Wallace, the L'Auberge employee responsible for cleaning operations on the casino floor, the carpet sweeper is a 121-pound machine which does not use a cord while in operation. Doc. 31, att. 10, pp. 10, 14. Employees are trained in the use of cleaning equipment. *Id.* at 7–8. Because of the carpet sweeper's range of motion, employees do not use warning cones when operating the machines. *Id.* at 4–5. Instead, with the casino floor open 24 hours a day, cleaning crews are instructed to "be mindful of where [they're] going and watch the customers." *Id.* at 3–4.

Surveillance video shows that Tezeno was pushing the carpet sweeper through the aisles of the casino floor while patrons were mostly facing the slot machines and looking away from the aisle. The area was dimly lit, with the exception of the bright and blinking lights of the machines. Sinegal tripped over the carpet sweeper, which appeared behind her in a matter of seconds, when she turned from her machine and started to walk into the aisle. PNK claims that Sinegal turned abruptly and moved with undue speed into the aisle, and that her view was obstructed by her hair and/or an object she was holding, but the video neither proves nor disproves these accusations.

Sinegal testified that she was looking ahead and moving forward as she walked into the aisle but did not see or hear the carpet sweeper until after she tripped on it. Doc. 34, att. 2, pp. 73–74. She also testified that the room was dimly lit, with the slot machines making noise and flashing lights. *Id.* at 148–49. She stated that she was focused on gambling up to that point and was unaware of any sweepers being used in the area. *Id.* at 66–68. She was

unsure how long she had been at the casino by the time of the accident but admitted that it was possible that she had stayed there all night. *Id.* at 51–53.

In her incident statement, Tezeno stated that Sinegal did not look up as she got out of her chair and that she was walking backwards. Doc. 34, att. 8. The video supports Sinegal's testimony and appears to show that, though she had turned and was looking directly ahead, she did not observe the carpet sweeper moving into her path at ground level. It also appears to show that Sinegal's view of the carpet sweeper would have been blocked until it entered her aisle. Witness Leonidis Carter, who was seated next to Sinegal, stated that the carpet cleaner "was not behind her at first from [his] knowledge." Doc. 34, att. 9. Reviewing the video, PNK corporate representative Bryan Lee acknowledged that Carter's statement appeared to be the more accurate of the two. Doc. 34, att. 5, pp. 22–23.

PNK analogizes this matter to obstacles left in store aisles, a common subject of the "open and obvious hazard" doctrine under Louisiana law. As the Eastern District noted, though such obstacles are generally in plain view of the plaintiffs, Louisiana courts have found them to be unreasonably dangerous based on other circumstances. *Butler*, 2009 WL 1507580 at *3. In *Darby v. Brookshire Grocery Co.*, 851 So.2d 358 (La. Ct. App. 2d Cir. 2003), for example, the elderly plaintiff stepped backward while looking at the prices of eggs and tripped over an unattended stocking cart. The court determined that, though the cart was in plain view, the store was partially at fault for the plaintiff's fall because "[s]tore operators . . . must anticipate that customers will not always be looking at the floor as they proceed with their shopping, but often will be looking at items on the shelf and, thus, may trip over obstructions in the aisle." *Id.* at 361; *see also Massery v. Rouse's Enter., LLC*, 196

So.3d 757, 764–65 (La. Ct. App. 4th Cir. 2016) (upholding an allocation of fault to a grocery store where a customer tripped backwards over a vegetable stocking cart after selecting produce from a shelf in front of her).

Though Sinegal had a duty to be aware of her surroundings, other circumstances on the casino floor preclude summary judgment for PNK. A carpet sweeper traveling around corners and across aisles is more likely to create an unreasonable risk of harm in areas where patrons may be distracted by the activity, lights, and noises of the casino floor. Patrons might exercise enough care in such an area without being required to keep their eyes trained to the ground for cleaning equipment. Issues of fact remain as to the degree of care exercised by Sinegal, particularly relating to the speed at which she was moving; whether her view was obstructed; and whether she reasonably would have been able to see Tezeno or the machine she was pushing ahead of her with an unobstructed view. Furthermore, any balancing relating to the utility of the parties' activities must be reserved for the trier of fact. Accordingly, PNK has not shown a right to summary judgment in this matter.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 12] will be denied as moot and the Motion for Summary Judgment [doc. 31] will be denied.

**THUS DONE** in Chambers on this ___31___ day of ___July___, 2019.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**